693 A.2d 558

MICHAEL MEARS, PLAINTIFF–APPELLANT, v. SANDOZ PHAR-
MACEUTICALS, INC., RISE STEEL CORPORATION, AND BEA-
VERTOWN CAST STONE, DEFENDANTS, AND WALSH CON-
STRUCTION COMPANY, A DIVISION OF GUY F. ATKINSON
COMPANY, AND DAURIO & RUSSO & SONS CONSTRUCTION
COMPANY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 29, 1997—Decided May 21, 1997.

Before Judges MICHELS, MUIR, Jr., and COBURN.

*Edward C. Fabiano* argued the cause for appellant (*Wasserstrum and Fabiano,* attorneys; *Mr. Fabiano,* of counsel and on the brief).

*Gerard J. Onorata* argued the cause for respondent Walsh Construction Company, a Division of Guy F. Atkinson Company

(*Peckar & Abramson,* attorneys; *Mr. Onorata,* of counsel and on the brief).

*James F. Kane* argued the cause for respondent Daurio & Russo & Sons Construction Company (*Paul Seligman,* attorney; *Mr. Kane,* of counsel; *Mr. Kane* and *Manuel J. Almeida, Jr.,* on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Plaintiff Michael Mears appeals from a summary judgment of the Law Division entered in favor of defendants Walsh Construction Company, a Division of Guy F. Atkinson Company (Walsh), and Daurio & Russo & Sons Construction Company (Daurio) in this personal injury, construction accident case.

On December 11, 1990, plaintiff, an iron worker employed by defendant Rise Steel Corporation (Rise Steel), was working on a construction project at the premises of defendant Sandoz Pharmaceuticals, Inc. (Sandoz) in East Hanover, New Jersey. Plaintiff had obtained his job through his union hall. Walsh was the general contractor on the job while Rise Steel was one of many subcontractors.

Plaintiff had been at the job site for approximately two weeks. His duty was to weld precast stone panels onto the steel girders of a recently constructed three-story structure known as Building 405. He had to weld the panels from atop the roof of the new building. Although there were different ways to access the roof, such as stairs, the closest means available to plaintiff was a scaffold. The scaffold was made of tubular steel with cross bracing and was composed of sections measuring five feet by approximately five feet. The scaffold did not have a safety railing encompassing its top platform. Apparently, the scaffold was positioned within a stairwell and rose to nearly the height of the roof.

On December 11, 1990, plaintiff had climbed and descended the scaffold two or three times without incident. On his third or fourth descent, he stepped onto the upper platform of the scaffold from the roof with a bucket of tools in one hand, and he felt something collapse under his foot. Plaintiff, however, testified during his deposition that he could not recall whether the scaffold collapsed or whether he simply fell. In any case, plaintiff next remembered falling approximately five feet before banging his head and shoulders on concrete steps. Plaintiff then rolled down the stairs, thereby falling and rolling a total of approximately twenty-eight feet.

As a result of the fall, plaintiff was semi-conscious, although he did not break any bones. However, he did have back and neck pain, a headache, and was disoriented. Plaintiff was sent home by the shop steward and the foreman, and did not return to work for one or two days. After the accident, Kerry Flynn, another worker at the site, dismantled the scaffold and placed it on the side of the building.

In December 1991, approximately a year after the accident, plaintiff consulted an attorney, and on December 8, 1992, plaintiff instituted this action against Sandoz, Rise Steel, and several John Doe and John Roe defendants to recover damages for the personal injuries he sustained as a result of the December 11, 1990 accident. On May 19, 1994, plaintiff moved to amend his complaint to add Walsh as a defendant, but the trial court denied the motion. On September 19, 1994, on a motion for reconsideration, the trial court granted plaintiff leave to amend the complaint to include Walsh as a defendant, and on September 27, 1994, plaintiff filed a second amended complaint, naming Walsh as a defendant.

On November 28, 1994, Walsh filed a third-party complaint against defendant Beavertown Cast Stone (Beavertown). On March 3, 1995, the trial court granted plaintiff leave to file a third amended complaint to add Beavertown as a direct defendant, and plaintiff filed that complaint on March 13, 1995. On June 19, 1995, the trial court granted plaintiff leave to file a fourth amended

complaint to add Daurio as a direct defendant, and on June 23, 1995, the fourth amended complaint was filed. On July 11, 1995, Walsh filed cross-claims against Rise Steel, Beavertown, and Daurio. On August 15, 1995, the trial court granted summary judgment in favor of Sandoz.

Thereafter, Walsh and Daurio moved for summary judgment, contending that plaintiff's complaint was barred by the statute of limitations. Daurio also claimed that plaintiff's expert's report was an inadmissible net opinion and that plaintiff failed to make out a *prima facie* case against it. Following argument, the trial court granted summary judgment in favor of both Daurio and Walsh on the ground that the complaint was time-barred. The trial court also agreed that plaintiff's expert opinion was a net opinion and was inadmissible to establish that either Walsh or Daurio deviated from the accepted standard of care required of them. Plaintiff appealed.

Plaintiff seeks a reversal of the summary judgment and a remand for further proceedings, contending that the trial court erred in granting summary judgment because (1) Walsh and Daurio were properly named under the fictitious party procedure of *R.* 4:26–4; (2) Walsh was under a nondelegable duty to use reasonable care for the safety of persons in and around the Sandoz job site; (3) plaintiff's expert's opinion was not a net opinion and instead established a *prima facie* case of negligence against Walsh and Daurio; and (4) plaintiff raised genuine issues of material fact which precluded the grant of summary judgment in favor of both Walsh and Daurio. We disagree and affirm.

We are satisfied from our study of the record and the arguments presented that the trial court properly held that plaintiff's personal injury tort action against Walsh and Daurio was barred by the two year statute of limitations of *N.J.S.A.* 2A:14–2 and that the fictitious party rule did not apply to suspend the running of the statute of limitations. We are convinced that there is no genuine issue of material fact that would preclude the grant of summary judgment in favor of Walsh and Daurio on statute of

limitation grounds whether the matter is viewed under *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 110 *A.*2d 24 (1954), or under the standard recently announced in *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 666 *A.*2d 146 (1995), and that all issues of law raised by plaintiff are clearly without merit. *R.* 2:11–3(e)(1)(E).

It is clear that plaintiff's personal injury tort action is governed by the statute of limitations contained in *N.J.S.A.* 2A:14–2. That provision provides:

> Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.

■ The statutes of limitations, including *N.J.S.A.* 2A:14–2, however, are subject to the "fictitious party" rule enunciated in *R.* 4:26–4. *Younger v. Kracke,* 236 *N.J.Super.* 595, 600, 566 *A.*2d 581 (Law Div.1989). *R.* 4:26–4 provides in part:

> In any action, irrespective of the amount in controversy, other than an action governed by R. 4:4–5 (affecting specific property or a res), if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification. Plaintiff shall on motion, prior to the judgment, amend the complaint to state defendant's true name, such motion to be accompanied by an affidavit stating the manner in which that information was obtained. . . .

■ The fictitious party rule suspends the running of the statute of limitations when a plaintiff does not know the true identity of a defendant. *Viviano v. CBS, Inc.,* 101 *N.J.* 538, 547, 503 *A.*2d 296 (1986). The rule stems from the courts' "attempt to balance the defendant's interest in repose with the plaintiff's interest in a just determination of his or her claim. The need to submit claims promptly to judicial management must be tempered by the policy favoring the resolution of claims on their merits." *Id.* at 547, 503 *A.*2d 296. As our Supreme Court has stated:

> Where . . . the plaintiff does not know or have reason to know that he has a cause of action against an identifiable defendant until after the normal period of limitations has expired, the considerations of individual justice and the considerations of repose are in conflict and other factors may fairly be brought into play.
>
> [*Farrell v. Votator Div. of Chemetron Corp.,* 62 *N.J.* 111, 115, 299 *A.*2d 394 (1973) ].

■ Turning to the elements of fictitious party practice, "[t]he first prerequisite to a fictitious name designation in a pleading is that the true identity of the defendant be 'unknown' to the plaintiff." *Marion v. Borough of Manasquan*, 231 *N.J.Super.* 320, 334, 555 *A.2d* 699 (App.Div.1989). For example, in *Washington v. Systems Maintenance Corp.*, 260 *N.J.Super.* 505, 507, 616 *A.2d* 1352 (Law Div.1992), the plaintiff was injured in December 1986, when a bag of laundry fell onto the plaintiff from an overhead laundry conveyance system. In November 1988, the plaintiff filed a complaint naming a John Doe corporation who allegedly designed, manufactured, and/or sold the laundry system. *Id.* at 508, 616 *A.2d* 1352. Plaintiff then amended the complaint in April 1992, naming Polymark Futurail (Polymark) as a defendant. *Ibid.* The *Washington* court determined that the plaintiff could not take advantage of the fictitious party rule because he had known the identity of Polymark since the installation of the laundry system. *Id.* at 515–16, 616 *A.2d* 1352. The court noted that the plaintiff also had prior contact with Polymark's personnel and had actually named Polymark as the manufacturer of the laundry system in his deposition. *Id.* at 516, 616 *A.2d* 1352. The court in *Washington* concluded that "the identity of the fictitious defendant was quite easily discoverable or already known" to the plaintiff prior to the plaintiff filing his original complaint. *Ibid.*

■ Yet, even if a plaintiff does not know the identity of a defendant, he or she will still be precluded from using *R.* 4:26–4, if, through the use of diligence, he or she should have known the defendant's identity prior to running of the statute of limitations. *See Cardona v. Data Sys. Computer Centre*, 261 *N.J.Super.* 232, 235, 618 *A.2d* 864 (App.Div.1992); *Younger v. Kracke, supra*, 236 *N.J.Super.* at 600, 566 *A.2d* 581. For instance, in *Cardona v. Data Systems Computer Centre, supra*, 261 *N.J.Super.* at 233, 618 *A.2d* 864, the plaintiff was involved in a motor vehicle accident in July 1986. In July 1988, the plaintiff filed suit, naming John Doe as the driver of another vehicle involved in the accident. *Ibid.* In June 1991, the plaintiff filed an amended complaint, naming Eileen

and Israel Vizcaino, as the driver and the owner, respectively, of one of the other vehicles in the accident. *Id.* at 233–34, 618 *A.*2d 864. The Vizcainos subsequently moved to dismiss the complaint on the ground that it was barred by the statute of limitations. *Id.* at 234, 618 *A.*2d 864.

The trial court dismissed the complaint, and we affirmed, ruling that the plaintiff could have known through the use of diligence the Vizcainos' identity prior to filing the claim. *Id.* at 234–35, 618 *A.*2d 864. We pointed out that the police had made a report of plaintiff's accident which revealed the names and addressees of all parties involved, but that the plaintiff and his attorney failed to acquire the report. *Id.* at 235, 618 *A.*2d 864. We concluded that the plaintiff's and the plaintiff's counsel's failure to make that simple inquiry constituted a lack of diligence and foreclosed plaintiff from invoking *R.* 4:26–4. *Ibid. See also Younger v. Kracke, supra,* 236 *N.J.Super.* at 601, 566 *A.*2d 581.

■ Besides acting with diligence to determine the identity of an unknown defendant prior to the running of the statute of limitations, a plaintiff must also act with diligence to determine an unknown defendant's identity after properly using *R.* 4:26–4 in filing his or her original complaint. *See Farrell v. Votator Div. of Chemetron Corp., supra,* 62 *N.J.* at 120, 299 *A.*2d 394; *Stegmeier v. St. Elizabeth Hosp.,* 239 *N.J.Super.* 475, 484, 571 *A.*2d 1006 (App.Div.1990), *declined to follow on other grounds, Spedick v. Murphy,* 266 *N.J.Super.* 573, 630 *A.*2d 355 (App.Div.), *certif. denied,* 134 *N.J.* 567, 636 *A.*2d 524 (1993); *Washington v. Systems Maintenance Corp., supra,* 260 *N.J.Super.* at 514, 616 *A.*2d 1352. If a plaintiff did not use diligence, and a court still permitted him or her to amend his or her original complaint to name a previously unknown defendant, "it would not only fail to 'penalize delay' on the plaintiff['s] part, but would also disregard 'considerations of essential fairness to [the] defendant[ ]', thereby violating the purpose behind the statute of limitations." *Younger v. Kracke, supra,* 236 *N.J.Super.* at 602–03, 566 *A.*2d 581.

 Finally, although not a requirement in fictitious party practice, a court should consider whether a defendant has been prejudiced by a plaintiff's failure to name the defendant earlier or whether a defendant has relied upon the lapse of time prior to being named. *See Farrell v. Votator Div. of Chemetron Corp., supra,* 62 *N.J.* at 122–23, 299 *A.*2d 394; *Marion v. Borough of Manasquan, supra,* 231 *N.J.Super.* at 335, 555 *A.*2d 699; *Younger v. Kracke, supra,* 236 *N.J.Super.* at 600, 566 *A.*2d 581. There cannot be any doubt that a defendant suffers some prejudice merely by the fact that it is exposed to potential liability for a lawsuit after the statute of limitations has run. *See, e.g., Marion v. Borough of Manasquan, supra,* 231 *N.J.Super.* at 335, 555 *A.*2d 699.

 Armed with these principles, we are satisfied that the trial court properly held that the statute of limitations barred plaintiff's claims against Walsh and Daurio. Plaintiff knew or should have known, through the exercise of diligence, Walsh's and Daurio's identity long before he claims that he did. In addition, both Walsh and Daurio have been prejudiced by plaintiff's delay. As to Walsh, plaintiff appears to have known its identity prior to the filing of the suit. During his deposition, plaintiff recalled that Walsh was a "big name" in the contracting business, that Walsh had a trailer with its name on it at the Sandoz job site, and that he believed that Walsh was a general contractor. Consequently, since Walsh was not "unknown" to plaintiff, plaintiff should be, and we now hold is, precluded from invoking *R.* 4:26–4 to suspend the running of the statute of limitations.

Moreover, even if plaintiff did not know Walsh's identity prior to filing the complaint, he should have known of it, and would have known it, if he had used diligence. First, if plaintiff only believed, but did not know, that Walsh was a general contractor, a simple inquiry to Sandoz or Walsh itself would have revealed that Walsh was indeed the general contractor on the job. There is nothing in this record to show or even suggest that plaintiff could not have obtained the information from Sandoz or Walsh. For that matter,

if plaintiff had made a simple inquiry at the job site when he returned following the accident, he would have learned that Walsh was the general contractor. Moreover, even if plaintiff waited until he retained an attorney to determine the identity of the general contractor, a simple inquiry by his attorney to Sandoz or plaintiff's employer Rise Steel as to whom was the general contractor on the site would have revealed Walsh's identity. Additionally, had plaintiff or his attorney merely obtained and reviewed the contractor meeting minutes or the daily force report of December 11, 1990, he or his attorney would have known Walsh's identity as Walsh's letterhead is on both documents; in fact, it is quite conspicuous on the contractor meeting minutes. Indeed, plaintiff does not even argue that Walsh's identity is not evident from the two documents. Thus, if plaintiff or plaintiff's attorney had used diligence, he or his attorney would have known Walsh's identity prior to running of the statute of limitations. What the court stated in *Washington v. Systems Maintenance Corp., supra,* 260 *N.J.Super.* at 516, 616 *A.*2d 1352, is applicable here and worth repeating: "[T]he identity of th[is] fictitious defendant was quite easily discoverable or already known" to plaintiff prior to the filing of his first complaint.

■ As to Daurio, a simple inquiry by plaintiff when he returned to work a few days following the accident would have revealed Daurio's identity or the identity of the owner and erector of the scaffold if it were not Daurio. In addition, if plaintiff or plaintiff's counsel had acted with diligence in obtaining and reviewing the contractor meeting minutes and the daily force report of December 11, 1990, and had diligently investigated all subcontractors named in those reports, he or his counsel would have known of Daurio prior to the running of the statute of limitations. Thus, diligence by plaintiff or plaintiff's counsel in investigating the subcontractors on the force reports would have revealed Daurio's identity or the identity of the scaffold's true owner and erector (if it were not Daurio) prior to plaintiff's filing of his original complaint. Moreover, in any case, plaintiff, through the use of dili-

gence, should have identified Daurio no later than 1993, rather than 1995.

Besides the fact that plaintiff should have known Walsh's and Daurio's identity prior to the running of the statute of limitations, both of these defendants suffered prejudice as a result of plaintiff's delay. The scaffold, the principal piece of equipment involved, can no longer be located. As a result of the disappearance of the scaffold, neither Walsh nor Daurio can show that the scaffold was not defective. Even plaintiff admitted during his deposition that he could not recall whether the scaffold collapsed or he merely fell. Moreover, even if it was defective, neither defendant can show that the defect did not cause plaintiff's fall. Furthermore, Walsh cannot show that a reasonable inspection by a general contractor would not have revealed the defect.

In addition, Daurio cannot show that it was not the owner or erector of the scaffold as it does not recall if it erected the scaffold in question, or, for that matter, whether it erected any scaffolds at all on the site. To this end, plaintiff's delay not only prejudiced Daurio because it cannot now locate and examine the scaffolding, the delay also prejudiced Daurio because the company apparently does not have any employees who recall the scaffolding in question. As such, plaintiff's delay has injured Daurio's ability to produce witnesses to exculpate itself by showing that it either did not own the scaffolding in question or that it erected the scaffolding in a reasonably safe manner. Consequently, Daurio, as well as Walsh, has been prejudiced by plaintiff's delay in instituting this action and should not now be compelled to defend this claim. Therefore, we affirm the trial court's determination that plaintiff's claims against Walsh and Daurio were barred by the statute of limitations.

Since we affirm the summary judgment on the ground that the action was time-barred, we need not reach the other issues raised in connection with this appeal.

Accordingly, the judgment under review is affirmed.